# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HEATHER PUFFPAFF

    Plaintiff,

v.

SCOTT LABISH, et. al.

    Defendants.

_____/

Case No. 18-10453

Honorable Nancy G. Edmunds

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [21]

Plaintiff Heather Puffpaff filed this civil lawsuit pursuant to 42 U.S.C. § 1983 against Macomb County and Macomb County Deputy Sheriffs Scott Labish and Robert Lockaby. Plaintiff claims that her fourth amendment rights were violated by Defendants Labish's and Lockaby's use of force during her arrest.

Pending before the Court is Defendants Scott Labish's and Robert Lockaby's motion for summary judgment. (ECF No. 21.) Defendants contend they are entitled to summary judgment on Plaintiff's excessive force claims. Defendants argue that: (1) their use of force was objectively reasonable and did not violate Plaintiff's constitutional rights because Plaintiff was actively resisting arrest; and (2) qualified immunity bars Plaintiff's claims. Plaintiff opposes the motion. On January 9, 2018, the Court held a hearing in connection with Defendants' motion. For the reasons set forth below, the Court **GRANTS** the motion.

### I. Background

On May 8, 2017, Plaintiff Heather Puffpaff was arrested by Macomb County Sheriff Deputies Scott Labish and Robert Lockaby for disorderly conduct and resisting and obstructing an officer.[1] This dispute arises from her arrest, and more specifically, the Deputies' use of force while attempting to arrest her.

Plaintiff first encountered Macomb County sheriff deputies approximately three hours before her arrest. On May 8, 2017, at approximately 5:16 p.m., Defendant Robert Lockaby and another sheriff deputy responded to a call on Parkview Street in Mt. Clemens, Michigan, about a woman sitting in a car drinking alcohol with a minor child inside. The woman was identified as Plaintiff, Heather Puffpaff.

Plaintiff is six feet four inches tall and weighs approximately two hundred and forty pounds. She has no criminal history other than the arrest at issue in this case. At the time of her arrest Plaintiff was not employed. Her primary source of income was from social security disability. According to Plaintiff, she suffers from a learning disability and anxiety.

There is no video recording of the first encounter and the parties provide slightly different accounts of what occurred. The parties primarily dispute whether Plaintiff was actually intoxicated during this first encounter. Defendant Lockaby testified that there was at least 1 empty beer can on the ground outside the car; an open beer within the car; and beer cans in the back seat. (Def's Ex 1, Lockaby Dep p 11:17-23.) He also observed that Plaintiff was "visibly intoxicated". (Def's Ex 1, Lockaby Dep p 11:9-12:12.) But he ultimately decided to write up the encounter as a "welfare check," rather than arrest

---
[1] Defendants Lockaby and Labish are collectively referred to herein as the "Deputies."

Plaintiff in front of her young daughter. And he released Plaintiff into the custody of her father on the condition that she stay at home the rest of the evening.

Plaintiff admits that she was drinking at the time of the first encounter with Defendant Lockaby. She testified that she was "buzzed" and that she was not in a condition to drive as a result of her drinking. However, she contends she was not "intoxicated," meaning that she "knew what [she] was doing." (Def's Ex 2, Plaintiff's Dep p 35-36.)

Later in the evening, at approximately 8:15 p.m., Defendant Lockaby responded to a call about a female in the courtyard of an apartment complex where she did not live that was using vulgar language and talking loudly on the telephone. Defendant Lockaby was the first officer on the scene and Defendant Deputy Labish arrived on the scene shortly after Lockaby arrived. An audio and video recording of the entire incident was captured by body cameras worn by both Deputies.

Upon arrival, Defendant Lockaby told Plaintiff that the neighbors had called to complain about her swearing and causing a disturbance and that she would have to leave the premises if she did not live there. (Def's Ex 5, Lockaby bodycam at 21:56:25.) Plaintiff said that she was at that address waiting for a friend, John Fitzgerald, who lived there. She told the officers that Mr. Fitzgerald was not home. (Def's Ex 5, Lockaby bodycam at 20:56:40.)

The parties dispute whether Plaintiff was actually intoxicated at the time of the second encounter. According to Defendant Lockaby, Plaintiff appeared to be intoxicated based upon her "slurred speech, the odor that was emitting from her … that she was obnoxiously loud and swearing, … and my prior involvement with her just a short period

3

of time earlier." Plaintiff argues that she was not intoxicated at the time of the second encounter, and that her appearance as intoxicated in the video is actually a reflection of her learning disability. Plaintiff points out that the video evidence does not portray Plaintiff as possessing any alcohol at the time of this encounter.

After Plaintiff and the Deputies discussed the situation for a few minutes, the Deputies informed Plaintiff that they were going to arrest her. As the Deputies were telling Plaintiff that she was under arrest, Mr. Fitzgerald arrived. **(Def's Ex 5, Lockaby bodycam at 20:59:49.)** Defendants claim that in an effort to diffuse the situation, the Deputies told Mr. Fitzgerald that Plaintiff would be arrested and taken to jail for drunk and disorderly conduct unless she could go inside and stay with him for the remainder of the evening. **(Def's Ex 5, Lockaby bodycam at 20:59:55.)**

But the situation actually escalated when Mr. Fitzgerald arrived. While Defendant Labish was talking with Mr. Fitzgerald he refused to let Plaintiff tell Mr. Fitzgerald her version of the story. When Defendant Labish told Mr. Fitzgerald that Plaintiff was reportedly swearing while on the telephone, Plaintiff became increasingly agitated and started yelling at the Deputies, "I'm not swearing!" (Def's Ex. 5, Lockaby bodycam at 21:00:25.) Mr. Fitzgerald told Plaintiff that she was raising her voice, and in response she yelled again, "Now I am, because I'm getting pissed!" (Def's Ex 5, Lockaby bodycam at 21:00:28.) Plaintiff then pointed at Deputy Labish and yelled, "I'm not swearing!"

At that point, Deputy Labish told Plaintiff, "Time to go to jail" and reached for her left arm. (Def's Ex 5, Lockaby bodycam at 21:00:34.) Plaintiff yelled "No!" then stood up quickly, as if to leave. (Def's Ex 5, Lockaby bodycam at 21:00:35.) Deputy Labish

4

grabbed her left arm and Plaintiff again yelled, "No!", and pulled her arm away from both Deputies. She flailed her arms as she pushed through the Deputies causing her cigarette ash to fly, and she retreated to a corner in the courtyard a few feet from where she was sitting. She then turned toward the officer and yelled a third time, "No!" **(**Def's Ex 5, Lockaby bodycam at 21:00:40.)

Immediately after Deputy Labish failed to physically restrain Plaintiff and she had retreated to the corner, the Deputies deployed their tasers. The Deputies shouted "taser, taser" just before firing. Based on the summary judgment evidence, the tasers do not appear to have been effective because the probes did not actually make contact with Plaintiff's body. In response to the tasers, Plaintiff cried to the Deputies "what are you doing," and "I'm innocent."

After the tasers failed to subdue Plaintiff, Deputy Labish grabbed Plaintiff's left arm and forcibly pulled Plaintiff to the ground. The video reflects that this takedown happened quickly, and that Deputy Lockaby was not involved in pulling Plaintiff to the ground. Once on the ground, Plaintiff initially appears to resist the Deputies' attempt to handcuff her, but ultimately, they were able to secure her. (Def's Ex 5, Lockaby bodycam at 21:00:59.) Once Plaintiff was settled on the ground and in handcuffs, Deputy Labish helped Plaintiff to her feet, walked her to his patrol car and after a short discussion with Deputy Lockaby, drove her to the Macomb County jail.

Plaintiff was charged with a felony count of assaulting/resisting/obstructing a police officer. She ultimately plead guilty to a misdemeanor count of attempting to resist arrest. A transcript of Plaintiff's plea and sentencing hearing in state court is part of the summary judgment record. (*See* Def's Ex 7.) At the state court hearing, Plaintiff admits

that she attempted to resist and obstruct the Deputies and that she disobeyed the Deputies' lawful commands. She also admits that she was under the influence of alcohol at the time of her arrest.

Plaintiff did not suffer any physical injuries as a result of her arrest. Plaintiff testified that she was not injured from the Deputies' use of the tasers. She stated that she scraped her knees when Deputy Labish pulled her to the ground, but she did not seek medical treatment for her scrapes. She claims that her primary injury is the emotional damage caused by the incident.

Plaintiff sued the Deputies and Macomb County under 42 U.S.C. § 1983 seeking redress for an alleged unreasonable and excessive use of force during her arrest. Plaintiff alleges that both Deputies' use of tasers, without warning, constitutes excessive and unreasonable force in violation of her constitutional rights. Plaintiff further contends that Deputy Labish's physical takedown of Plaintiff, without warning, constitutes excessive and unreasonable force, and that Deputy Lockaby should be held responsible for Deputy Labish's actions because he failed to prevent the takedown. The Deputies move for summary judgment on Plaintiff's claims. They contend that the force used was reasonable under the circumstances, and alternatively, that they are entitled to the protections of qualified immunity.

II.     **Summary Judgment Standard**

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir.2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts

that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. Analysis

Claims regarding an officer's use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 394; 109 S. Ct. 1865; 104 L. Ed. 2d 443 (1989); *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 133 (6th Cir. 2014). The determination of whether the force used to effect a particular seizure is reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests and the countervailing governmental interests at stake." *Caie v. West Bloomfield Twp.,* 485 F. App'x 92, 95–97 (6th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). The Court must consider the totality of the circumstances presented by the particular case, including (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade by flight. *Id.*

In addition, the Court analyzes the challenged conduct from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court must take into account "the fact that police

officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 397). "Ultimately, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

This case primarily centers on the third factor: whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight.[2] Sixth Circuit case law recognizes that the reasonableness of an officer's use of a taser turns on whether the suspect is actively resisting arrest. *Thomas v. City of Eastpointe,* 715 F. App'x 458, 460 (6th Cir. 2017) ("This circuit—and several others—have drawn the line at the suspects active resistance."); *Brown v. Chapman,* 814 F.3d 447, 46 (6th Cir. 2016). Use of a taser is generally held to be reasonable where the suspect is actively resisting arrest. *Thomas*, 715 F. App'x at 46 ("If the suspect was actively resisting, use of a taser to subdue him as reasonable."). Conversely, an officer's use of a taser has been found to be excessive and unreasonable where the individual is not actively resisting arrest, or is detained and poses no threat. *Id.*; *see Caie,* 485 F. App'x at 95–97 (explaining that the use of a taser on a

---

[2] The Court disagrees with Plaintiff that the first and second factors weight "heavily" in Plaintiff's favor. While it is true that Plaintiff's crime of disorderly conduct and resisting arrest may not be as severe as the crimes at issue in other cases, Plaintiff's crimes are certainly more severe than no crime at all. *Compare Kent v. Oakland Cty.*, 810 F.3d 384, 387–89 (6th Cir. 2016) (plaintiff was not a suspect of any crime and tased in home after refusing to obey officer's verbal commands). In addition, given her size and demeanor, it cannot be said that Plaintiff posed no threat of harm to the Deputies.

non-resistant person—absent some compelling justification—has been found to be unreasonable by the Sixth Circuit).

The same is true for the use of physical force to takedown a suspect. Courts in the Sixth Circuit have found that an officer's use of force during a takedown is not an excessive use of force where the plaintiff was actively resisting arrest. *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot."). *See also Bozung v. Rawson,* 439 F. App'x 513, 520 (6th Cir. 2011) (finding that defendant officer did not use excessive force by using a straight arm takedown technique to neutralize and handcuff plaintiff, or by placing his knee on the back of a suspect who was being handcuffed but was not yet neutralized).

Courts in the Sixth Circuit have found active resistance where a suspect physically struggles with police, threatens or disobeys officers, or refuses to be handcuffed. *Thomas*, 715 Fed.App'x at 460; *Cockrell v. City of Cincinnati,* 468 F. App'x 491, 495 (6th Cir. 2012). *See, e.g.*, *Hagans v. Franklin County Sheriff's Office,* 695 F.3d 505, 511 (6th Cir. 2012); *Foos v. City of Delaware*, 492 F. App'x 582, 589 (6th Cir. 2012) (suspect behaved "erratically and irrationally"); *Caie*, 485 F. App'x at 96–97 (suspect physically resisted handcuffs). But when a suspect is "compliant or ha[s] stopped resisting," the law is established that using a taser constitutes excessive force. *Hagans*, 695 F.3d at 509; *see, e.g., Kijowski v. City of Niles*, 372 F. App'x 595, 599–600 (6th Cir. 2010) (suspect sitting in his truck "not causing any trouble"); *Roberts v. Manigold*, 240 F. App'x 675, 676 (6th Cir. 2007) (one officer had suspect "completely pinned" while other officer used taser).

Here, the summary judgment evidence establishes that Plaintiff was actively resisting the Deputies' efforts to arrest her. Defendant Labish told Plaintiff she was going to jail. Plaintiff yelled and pointed at the officers, and she was clearly angry. Observing that she was not going to come willingly, Defendant Labish reached for Plaintiff's arm. But Plaintiff got up from where she was sitting and pulled her arm away. Twice she yelled, "No!" as Deputy Labish and then Deputy Lockaby reached for her arm to gain control over her. And she yelled, "No!" a third time as she pushed the Deputies out of the way and retreated to a corner away from them. Had Plaintiff not been boxed in the corner, it is certainly possible that she would have continued to resist the Deputies' attempts to arrest her.

The video evidence reflects that Plaintiff was actively resisting arrest when the Deputies utilized physical force to secure her. And Plaintiff admitted at her sentencing hearing that she disobeyed a lawful police command, and attempted to resist and obstruct the Deputies while they were trying to arrest her.[3] Because Plaintiff was actively resisting arrest, neither the Deputies' use of a taser nor Defendant Labash's physical takedown of Plaintiff constitutes unreasonable or excessive use of force under established Sixth Circuit jurisprudence.[4] Moreover, the Deputies' use of minimal force

---

[3] At the hearing on Defendants' motion, Plaintiff's counsel argued that he would have advised Plaintiff to not plead guilty to resisting arrest had he represented Plaintiff during her criminal proceedings. But that does not change the fact that Plaintiff did plead guilty and expressly admits to resisting the Deputies' attempts to arrest her on the record during her sentencing hearing.

[4] Where multiple officers are alleged to have violated a plaintiff's Fourth Amendment rights, each officer's conduct must be analyzed individually. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citing *Dorsey v. Barber*, 517 F.3d 389, 399 n. 4 (6th Cir. 2008)). "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or owed the victim a duty of protection against the use of excessive force.'" *Binay*, 601 F.3d at 650 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Here, the video evidence reflects that Defendant Lockaby was not involved in the takedown of Plaintiff and that he neither directed Deputy Labish to conduct the takedown, nor had

to secure Plaintiff was objectively reasonable considering the facts that Plaintiff was significantly larger than the Deputies, appeared intoxicated and angry, refused to cooperate with the Deputies' commands, and ultimately suffered no physical injuries from the force.

But even if the Deputies' use of force was not objectively reasonable, the Deputies are entitled to qualified immunity from Plaintiff's claims. The doctrine of qualified immunity protects government officials from liability for civil damages for violating a person's rights where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223, 231; 129 S. Ct. 808; 172 L. Ed. 2d 565 (2009) (citation omitted). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna,* 136 S. Ct. 305, 308; 193 L. Ed. 2d 255 (2015). "The dispositive question is whether the violative nature of particular conduct is clearly established," and "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "The unlawfulness must be apparent" in light of pre- existing law. *Anderson v. Creighton,* 483 U.S. 635, 640; 107 S. Ct. 3034; 97 L. Ed. 2d 523 (1987).

Here, Plaintiff complains that Defendants violated her constitutional rights by "using a taser against [her] without warning or justification, and violently throwing [her] onto the cement ground without warning or justification." The Court disagrees with the

---

the means and opportunity to prevent the takedown. Therefore, even if Deputy Labish's actions constitute excessive force, Deputy Lockaby would not be liable for such conduct.

Defendants' position that the Deputies actually warned Plaintiff before firing the tasers. The Deputies did not verbally instruct Plaintiff to, for example, get on the ground or to put her hands behind her head. And the Deputies' shouting of "taser, taser" immediately upon discharging their tasers did not give Plaintiff sufficient time to comply with their commands. Notwithstanding, because the undisputed evidence demonstrates that Plaintiff was actively resisting arrest at the time the tasers were used, this case fits within the line of cases standing for the proposition that Plaintiff had no clearly established right not to be tasered under the circumstances facing the Deputies. *Caie*, 485 F. App'x at 95–97. Furthermore, there is no binding law in the Sixth Circuit that would put a reasonable officer on notice that a subject resisting arrest had the right to be warned before physical force or a taser is used to bring a subject to the ground in order to be secured. *See Thomas*, 715 F. App'x at 460. Accordingly, Defendants Lockaby and Labish are entitled to qualified immunity.

IV.     Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED.

**SO ORDERED.**

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: January 17, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 17, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett  
Case Manager